1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11  KEVIN WALKER,                              1:02-cv-05801-AWI-GSA-PC

12                    Plaintiff,               FINDINGS AND RECOMMENDATIONS TO
                                               PROCEED ON CERTAIN CLAIMS AND
13        v.                                   DISMISS REMAINING CLAIMS FROM
                                               ACTION
14  UNITED STATES OF AMERICA, et al.,
                                               OBJECTIONS, IF ANY, DUE IN THIRTY (30)
15                    Defendants.              DAYS

16  _____/

17  **I.       RELEVANT PROCEDURAL HISTORY**

18        Kevin Walker ("plaintiff") is a federal prisoner proceeding pro se in this civil action.

19  Plaintiff seeks relief pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of</u>

20  <u>Narcotics</u>, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal

21  actors.

22        Plaintiff filed the complaint on June 25, 2002.  (Doc. 1.)  On February 25, 2004, the court

23  screened the complaint and ordered plaintiff to either file an amended complaint or notify the

24  court of his intent to proceed only on the Federal Torts Claims Act ("FTCA") claim against the

25  USA. (Doc. 49.)  On March 19, 2004, the court issued an order advising plaintiff that he may not

26  file the amended complaint he mailed to his family.  (Doc. 51.)  On March 29, 2004, plaintiff

27  filed the amended complaint he mailed to his family.  (Doc. 53.)  On April 5, 2004, the court

28  ordered the amended complaint stricken, with leave to file another amended complaint, for

1

1  plaintiff's failure to comply with instructions in the court's order of March 19, 2004.  (Doc. 55.)

2  On May 4, 2004, plaintiff filed a second amended complaint.  (Doc. 56.)  On July 18, 2005, the

3  court ordered the second amended complaint stricken for plaintiff's failure to comply with

4  instructions in the court's order of February 25, 2004.  (Doc. 70.)

5      On August 29, 2005, plaintiff filed the Second Amended Complaint ("SAC")  upon

6  which this action now proceeds.[1]  (Doc. 72.)  On October 5, 2005, the court screened the SAC

7  and issued findings and recommendations, recommending this action proceed solely on

8  plaintiff's FTCA claim against the USA, and all other claims be dismissed.  (Doc. 78.)  On May

9  31, 2007, the District Judge adopted the findings and recommendations in part, dismissing the

10  constitutional claims against the USA, Bureau of Prisons ("BOP"), Taft Correctional Institution

11  ("TCI"), and Wackenhut Correctional Corporation ("WCC"); and dismissing the FTCA claims

12  against the BOP and BOP employees.  (Doc. 83.)

13      This action now proceeds pursuant to Bivens on the complaint's allegations against BOP

14  employees and Taft employees for violations of plaintiff's Eighth Amendment rights, and against

15  the USA, Taft Employees, TCI, and WCC for torts alleged in the complaint.  The District Judge

16  referred the case back to the Magistrate Judge for further screening of the Eighth Amendment

17  claims against BOP employees and Taft employees, and the tort claims against TCI, WCC, and

18  Taft employees, to determine whether plaintiff states claims under Rule 8 of the Federal Rules of

19  Civil Procedure.  (Doc. 83.)

20  **II.    SUMMARY OF SECOND AMENDED COMPLAINT**

21      Plaintiff is a federal prisoner currently incarcerated at the Federal Correctional Institution

22  at Terminal Island, California.  The events at issue in this action allegedly occurred at TCI while

23  plaintiff was incarcerated there.  Plaintiff names as defendants the USA, TCI, WCC, BOP, and a

24  number of individuals employed by the BOP and TCI.  Plaintiff alleges that the defendants

25  knowingly exposed him to the fungus that is known to cause Valley Fever by transferring him to

26  TCI and then failed to properly diagnose him and treat him for his condition.

27  _____

28      [1]The amended complaint filed on August 29, 2005 shall be referred to as the Second Amended Complaint
("SAC") in these findings and recommendations.

1    Plaintiff alleges that on December 8, 1999, he arrived at TCI, a correctional facility
2  owned by the BOP, operated by WCC, and located in the city of Taft, in the San Joaquin Valley
3  of California.  Plaintiff maintains that San Joaquin Valley soil is known to carry the
4  coccidioidomycosis fungal spore, which causes Valley Fever.  Plaintiff alleges that defendants
5  knew about the presence of the fungal spore when they began accepting federal inmates at TCI in
6  late 1997, but they did nothing to prevent inmates from being exposed to Valley Fever.  Plaintiff
7  maintains that dark-skinned persons are more susceptible to the worst cases of Valley Fever, and
8  defendants transferred plaintiff, a dark-skinned African-American, to TCI with disregard to his
9  health and safety.

10    Plaintiff alleges that the USA, BOP, TCI, WCC, BOP employees, and Taft employees
11  were responsible for plaintiff's care, custody and control while he was housed at TCI.  Plaintiff
12  alleges that WCC and TCI have received and reviewed grievances from several inmates
13  complaining about inadequate medical treatment for Valley Fever they contracted while housed
14  at TCI since 1997.  Plaintiff alleges that WCC and TCI requested and purchased grass to install
15  at TCI in an effort to prevent sand storms which cause Valley Fever spores to become airborne,
16  but the request was denied by the BOP, so the measures were not taken.  Plaintiff maintains that
17  by July 21, 2001, when he was diagnosed with Valley Fever, WCC and TCI had failed to take
18  reasonable measures to abate the substantial risk to inmates from contracting the disease.
19  Plaintiff alleges that the USA, BOP, WCC, TCI, BOP employees, and Warden Andrews did not
20  properly supervise the employees and medical staff at TCI.

21    Plaintiff alleges that on July 17, 2001, he reported to sick call complaining of headaches,
22  shortness of breath, and night sweats.  Plaintiff alleges an x-ray of his chest was taken and he was
23  sent back to his unit.

24    Plaintiff alleges that on July 18, 2001, Dr. Akanno informed him that the x-rays revealed
25  his lungs were nearly filled to the top with something black.  Plaintiff alleges Dr. Akanno
26  prescribed Biaxin and Hytuss and drew blood for testing of Valley Fever and pneumonia.

27    Plaintiff alleges that on July 19, 2001, Dr. Akanno and Nurse Practitioner Snellen
28  changed plaintiff's medication to Erythromycin, an antibiotic.  Plaintiff alleges that when he

1   asked if he had a bacterial infection, Akanno said he would not know until the blood test results

2   were returned.

3        Plaintiff alleges that on July 20, 2001, he saw Nurse Nichols at the pill window and

4   complained to her about boils and lesions on his face and body, and told her he was spitting up

5   blood.  Plaintiff alleges Nichols told him to continue his medication and gargle with salt water,

6   but he was not examined.

7        Plaintiff alleges that on July 25, 2001, Dr. Akanno, Nurse Minnecci, and Nurse Snellen

8   informed him the boils were an allergic reaction to the Erythromycin, but he was not examined

9   and no one cancelled the medicine.

10        Plaintiff alleges that on July 26, 2001, Dr. Akanno prescribed Biaxin again, a medication

11   for viral infections, and when plaintiff asked Dr. Akanno if he had a viral infection, the doctor

12   became angry and threw him out.

13        Plaintiff alleges that on July 27, 2001, he approached BOP Oversight Specialist Currier

14   and asked him if is was possible to provide the proper medicine for a person if they had an

15   infection in their lungs and it could be either viral, bacterial, or fungal, without results of a blood

16   test, and Currier said "No."

17        Plaintiff alleges he went to the hospital on July 27, 2001and was called into the

18   examination room with Dr. Akanno, Nurse Minnecci, and Lt. Bucholz.  Plaintiff alleges he was

19   examined by Dr. Akanno who advised Nurse Minnecci he was "cleared."  Plaintiff alleges Nurse

20   Minnecci then ordered Lt. Bucholz to take plaintiff to the Special Housing Unit ("SHU") for

21   punishment, for lying to his family and defendant Currier about his medical condition, and he

22   was taken to the SHU.

23        Plaintiff alleges that Warden Andrews, Executive Assistant Craig, Dr. Akanno, Nurse

24   Minnecci, Lt. Bucholz, and Nurse Snellen wrote a false incident report stating that plaintiff's

25   medical file showed Dr. Akanno had diagnosed his illness and plaintiff was given notification of

26   it. Plaintiff alleges he sent word to BOP Oversight Specialist Currier about the false incident

27   report, but Currier did not respond back.  Plaintiff alleges he received no treatment from July 27-

28   30, 2001.

1    Plaintiff alleges on July 30, 2001, the blood test results were returned from the lab and

2    Dr. Akanna and Lt. Daughty informed him the result was "positive" for coccidioidomycosis and

3    not pneumonia for which he was being treated.

4    Plaintiff alleges the USA, BOP, WCC, TCI, BOP employees, and Taft employees

5    Andrews, Craig, Minnecci, Snellen, and Bucholz all knew or should have known of his condition

6    on July 30, 2001 and should have treated him for Valley Fever.  However, plaintiff alleges he

7    remained in the SHU sleeping on the floor without treatment, and Nurse Noriega, who dispensed

8    medication in the SHU, gave him no medication.  Plaintiff also alleges that defendants Lappin,

9    Andrews, Kendig, Currier, Akanno, and Minnecci delayed his blood test results, causing

10   progression of his disease past the lungs, based on their policy to obtain authorization from WCC

11   headquarters in Florida and BOP's authorization from Washington, D.C., before he could be

12   properly cared for, treated by a specialist, and admitted to a hospital.

13   Plaintiff alleges that on August 3, 2001, he was taken to see Dr. Mui, an infectious

14   disease specialist, who re-diagnosed him with "disseminated coccidioidomycosis."  Plaintiff

15   alleges that Dr. Mui told him the only reason he hadn't died was that the disease escaped through

16   his skin, which is very, very rare; the disease usually returns back to the already filled lungs and

17   causes death.

18   Plaintiff alleges that Warden Andrews did not properly make policy or supervise

19   employees and medical staff at TCI.  Plaintiff also alleges that Dr. Akanno and Nurse Minnecci

20   failed to properly supervise Nurses Snellen, Nichols, and Noriega, who failed to diagnose

21   plaintiff's illness even when boils appeared and the diagnosis was obvious.  Plaintiff alleges that

22   even his sister, who is not a nurse or doctor, diagnosed his illness prior to the blood test results

23   and informed Taft employees and Senator Boxer.

24   Plaintiff alleges that as a result of defendants' misconduct, his disease progressed from

25   his lungs to his blood, and now to "systematic coccidioidomycosis" affecting his blood, bones,

26   lymph nodes, and spine, causing holes in "thoracic, cervical, lumbar, and illac."  Plaintiff also

27   alleges he has a hole and fracture in his left clavicle and requires surgery to remove a large

28   portion of the clavicle joint and breast plate.  Plaintiff alleges he suffers continuous severe

1   headaches, numbness and tingling in his right leg from damage to his lower spine, and a severe

2   change in the quality of his life.  Plaintiff alleges his liver has enlarged 2 to 3 centimeters and he

3   now risks liver damage.  Plaintiff claims that if the disease progresses to his central nervous

4   system, research shows a 90% chance of dying within twelve months.  Plaintiff claims he suffers

5   from fear of dying, emotional distress, and pain and suffering.

6          Plaintiff seeks monetary damages and injunctive relief.

7   **III.    SCREENING REQUIREMENT**

8          The court is required to screen complaints brought by prisoners seeking relief against a

9   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

10  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

11  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

12  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

13  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

14  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

15  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

16         "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

17  exceptions," none of which applies to § 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S.

18  506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short

19  and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ.

20  Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's

21  claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  A court may

22  dismiss a complaint only if it is clear that no relief could be granted under any set of facts that

23  could be proved consistent with the allegations.  Id. at 514.  Discovery and summary judgment

24  motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims."

25  Id. at 512.  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant

26  is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the

27  pleadings that a recovery is very remote and unlikely but that is not the test.'"  Jackson v. Carey,

28  353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see

also <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting <u>Fontana v. Haskin</u>, 262 F.3d 871, 977 (9th Cir. 2001)).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."  <u>Neitze v. Williams</u>, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

## III.   PLAINTIFF'S CLAIMS

### A.   Claims Against the Regional Designator and John/Jane Does

Plaintiff brings allegations against the Regional Designator, and unspecified John and Jane Does.  However, plaintiff does not name these persons as defendants, and the complaint does not clearly indicate whether plaintiff intends to include them as defendants in this action.  In light of this uncertainty, the court finds that the Regional Designator and unspecified John/Jane Does should be dismissed from this action.

### B.   Eighth Amendment Claims

In <u>Bivens</u>, 403 U.S. 388, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights.  In <u>Bivens</u>, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages, despite the absence of any federal statute creating liability.  <u>Bivens</u>, 403 U.S. at 389.  The right of a Bivens action was extended in <u>Carlson v. Green</u>, 446 U.S. 14 (1980), to recognize an implied action for damages against federal prison officials for violations of the Eighth Amendment.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with

deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

(quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison

official does not act in a deliberately indifferent manner unless the official "knows of and

disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 834

(1994).  Deliberate indifference may be manifested "when prison officials deny, delay or

intentionally interfere with medical treatment," or in the manner "in which prison physicians

provide medical care."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

further harm in order for the prisoner to make a claim of deliberate  indifference to serious

medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison

Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

### 1.    Official Capacity

Lawsuits against federal officials for constitutional deprivations that occur under color of

federal law are actionable pursuant to Bivens, 403 U.S. 388.   Like state prisoners suing under 42

U.S.C. § 1983, federal prisoners proceeding under Bivens may sue relevant officials in their

individual capacity only.[2]  Id.  For this reason, plaintiff's claims brought under Bivens against

defendants who are federal officials in their official capacities are not cognizable and must be

dismissed from the action.

### 2.    Supervisory Liability

Supervisory personnel cannot be held liable in a Bivens action for the actions of their

employees under a theory of respondeat superior.  Terrell v. Brewer, 935 F.2d 1015, 1018 (9th

Cir. 1991).  Therefore, the court finds that plaintiff fails to state a claim against any of the

defendants under Bivens based on supervisory liability under respondeat superior.

### 3.    BOP Employees

---

[2]The Eleventh Amendment bars damages actions against state officials in their official capacity.  See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992).

1    Plaintiff brings allegations against BOP employees Harley Lappin (Director of BOP),

2  Newton E. Kendig II (Medical Director of BOP), Mary Ellen Thomas (Assistant Medical

3  Director of BOP), and Zachary Currier (BOP Oversight Specialist) (hereinafter "the BOP

4  employees") for violation of his constitutional rights under the Eighth Amendment.  Plaintiff

5  alleges the BOP employees knew or should have known about his diagnosed condition on July

6  30, 2001, but left him sleeping on the floor in the SHU without any medical treatment for four

7  days, causing his illness to worsen.  (SAC at 7-8 ¶¶37-38.)  Therefore, the court finds that

8  plaintiff states a cognizable claim against the BOP employees for violation of plaintiff's rights

9  under the Eighth Amendment.

10         **4.     Taft  Employees**

11    Plaintiff brings allegations against Taft employees Raymond D. Andrews (Warden of

12  TCI), Terry Craig (Executive Assistant to Warden), Jonathan E. Akanno (M.D. at TCI), Margaret

13  Minnecci (R.N at TCI.), Theresa Bucholz (Lieutenant at TCI), Suzanne Snellen (Nurse

14  Practitioner at TCI), Esteban Noriega (Nurse at TCI), and Geraldine Nichols (L.V.N. at TCI)

15  (hereinafter "the Taft employees") for violation of his constitutional rights under the Eighth

16  Amendment.

17    The Supreme Court has refused to extend a Bivens remedy to suits against private

18  entities.  See Correctional Services Corporation v. Malesko, 534 U.S. 61, 62 (2001) (declining to

19  infer a constitutional tort remedy against a private corporation).  However, the Supreme Court

20  has never addressed the issue of a federal prisoner's right to a Bivens action against prison guards

21  and employees at a private prison.  Those courts that have addressed the issue have indicated that

22  the availability of a Bivens action is premised on whether there is another remedy against the

23  private prison employee.  See Peoples v. Corrections Corp. Of America, 2004 WL 2278667

24  (D.Kan. 2004); see also Peoples v. CCA Detention Centers, 422 F.3d 1090 (10th Cir. 2005); see

25  also Holly v. Scott, 424 F.3d 287 (4th Cir. 2006).

26    In its order of May 31, 2008, the District Court noted that it is difficult to ascertain if

27  plaintiff has alternative remedies available.  (Doc. 83 at 5:4-5.)  Given that no defendant has

28  answered the complaint, the Taft employees have not asserted that a Bivens action is not

available against them, nor have they provided their position on whether plaintiff has any

remedies under state law. Id. at 5:5-8.  The Court declined to conclusively find that plaintiff does

not have any Bivens causes of action against the Taft employees, and the case was referred back

to the Magistrate Judge, in part to screen the complaint's allegations that the Taft employees

violated plaintiff's Eighth Amendment rights.  Accordingly, the undersigned now proceeds with

screening.

Plaintiff alleges that Taft employees Andrews, Craig, Akanno, Minnecci, Noriega,

Snellen, and Bucholz all knew or should have known about his diagnosed condition on July 30,

2001, but refused to provide him with any medicine or treatment for four days, causing his illness

to worsen.  (SAC at 7-8 ¶¶34, 37, 38.)  Plaintiff alleges that Nurse Noriega, who dispensed

medication in the SHU, gave him no medication.  (SAC at 7-8 ¶37.)  Plaintiff also alleges that

Andrews, Akanno, and Minnecci delayed his blood test results, causing progression of his

disease past the lungs, based on their policy to obtain authorization from WCC headquarters in

Florida and BOP's authorization from Washington, D.C., before he could be properly cared for,

treated by a specialist, and admitted to a hospital.  (SAC at 10-11 ¶49.)  Therefore, the court finds

that plaintiff states a cognizable claim against the Taft employees for violation of his rights under

the Eighth Amendment.

## C.    Tort Claims

The FTCA provides the exclusive remedy for "injury or loss of property, or personal

injury or death arising or resulting from the negligent or wrongful act of omission of any

employee of the Government while acting within the scope of his office or employment . . ."  28

U.S.C. ¶ 2697(b)(1).  The United States is the only proper defendant in a suit brought pursuant to

the FTCA.  FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998); Kennedy v. United States Postal

Serv., 145 F.3d 1077, 1078 (9th Cir. 1998).

"To establish a medical malpractice claim, the plaintiff must allege in the complaint: (1)

defendant's legal duty of care toward plaintiff; (2) defendant's breach of that duty; (3) injury to

plaintiff as a result of that breach - proximate or legal cause; and (4) damage to plaintiff."

Rightley v. Alexander, No. C-94-20720 RMW, 1995 WL 437710, at *3 (N.D. Cal. July 13,

1    1995) (citing to Hoyem v. Manhattan Beach School Dist., 22 Cal.3d 508, 514 (1978)); 6 B. E.

2    Witkin, Summary of California Law, Torts § 732 (9th ed. 1988).  "[M]edical personnel are held

3    in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and

4    exercised by members of their profession in similar circumstances."  Hutchinson v. United

5    States, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal citations omitted).

6         Prison personnel have a statutory duty to summon medical care.  Watson v. State, 21 Cal.

7    App. 4th 836, 841 (Cal. Ct. App. 1993); Zeilman v. County of Kern, 214 Cal. Rptr. 746, 754

8    (Cal. Ct. App. 1985).  Specifically, "a public employee . . . is liable if the employee knows or has

9    reason to know that the prisoner is in need of immediate medical care and he fails to take

10   reasonable action to summon such medical care."  Cal. Gov't Code § 845.6 (West 2001).

11   "Liability . . . is limited to serious and obvious medical conditions requiring immediate care."

12   Watson, 21 Cal. App. 4th at 841 (citations omitted).

13              **1.    USA**

14        In its order of May 31, 2007, the District Court found that plaintiff may proceed against

15   the USA on the FTCA claims, on the allegation that United States' employees transferred

16   plaintiff to a facility that was constructed by the United States with knowledge that the soil upon

17   which it was built was contaminated with fungal spores that are known to cause Valley Fever.

18   (Order of 5/3/08 at 7 ¶ 7.)

19              **2.    Taft Employees, Taft (TCI), and WCC**

20        A FTCA claim is only for the negligent or wrongful conduct of federal employees or

21   agencies.  FDIC v. Meyer, 510 U.S. 471, 477 (1994).  One who is not an "employee" of the

22   federal government cannot subject the United States to liability under the FTCA.  United States

23   v. Orleans, 425 U.S. 807, 813 (1976).  The statutory definition of "employee" does not list

24   contractors with the United States.  See 28 U.S.C. § 2761.  Thus, it does not appear the FTCA

25   would apply to the Taft employees, Taft (TCI) or WCC.  However, the FTCA would not bar

26   plaintiff from bringing tort claims against these defendants outside of the FTCA.

27        Plaintiff alleges that TCI, WCC, and each of the Taft employees were responsible for

28   plaintiff's care, custody and control while he was housed at TCI.  Plaintiff alleges that WCC and

1   TCI have received and reviewed grievances from several inmates complaining about inadequate

2   medical treatment for Valley Fever they contracted while housed at TCI since 1997.  Plaintiff

3   alleges that WCC and TCI requested and purchased grass to install at TCI in an effort to prevent

4   sand storms which cause Valley Fever spores to become airborne, but the request was denied by

5   the BOP, so the measures were not taken.  Plaintiff maintains that on July 21, 2001, when he was

6   diagnosed with Valley Fever, WCC and TCI had failed to take reasonable measures to abate the

7   substantial risk to inmates from contracting the disease.  Plaintiff alleges that WCC and TCI

8   knew or should have known about plaintiff's diagnosed condition on July 30, 2001, but no

9   treatment was provided for him for four days.  Plaintiff alleges that WCC and TCI did not

10   properly supervise the employees and medical staff at TCI.  Plaintiff alleges that WCC and TCI's

11   policy requiring authorization from WCC headquarters in Florida and BOP's authorization from

12   Washington, D.C., before plaintiff could be properly cared for, caused a delay in plaintiff's

13   treatment and caused his disease to progress past his lungs, to the point that all efforts have failed

14   to bring it into remission.

15        Based on these allegations, and plaintiff's allegations stated above, the court finds that

16   plaintiff states torts claims against the Taft employees, TCI and WCC .

17   **IV.    CONCLUSION**

18        Based on the foregoing analysis, the court RECOMMENDS that:

19       1.    This action proceed against the USA on the FTCA claims, on the allegation that

20          United States' employees transferred plaintiff to a facility that was constructed by

21          the United States with knowledge that the soil upon which it was built was

22          contaminated with fungal spores that are known to cause Valley Fever;

23       2.    This action proceed against the BOP employees for violation of plaintiff's rights

24          under the Eighth Amendment;

25       3.    This action proceed against the Taft employees for violation of plaintiff's rights

26          under the Eighth Amendment;

27       4.    This action proceed against the Taft employees, TCI and WCC for plaintiff's tort

28          claims; and

1        5.     All other claims be dismissed from this action.

2        The Court HEREBY ORDERS that these Findings and Recommendations be submitted

3 to the United States District Court Judge assigned to this action pursuant to the provisions of 28

4 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States

5 District Court, Eastern District of California.  Within THIRTY (30) days after being served with

6 a copy of these Findings and Recommendations, any party may file written Objections with the

7 Court and serve a copy on all parties.  Such a document should be captioned "Objections to

8 Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served

9 and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the

10 Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

11 § 636 (b)(1)©.  The parties are advised that failure to file Objections within the specified time

12 may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

13 (9th Cir. 1991).

14

15      IT IS SO ORDERED.

16   **Dated:**   **May 15, 2008**             **/s/ Gary S. Austin**

17                                 UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28