1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9            EASTERN DISTRICT OF CALIFORNIA

10

11   KEVIN WALKER,                          1:02-cv-05801-AWI-GSA-PC

12              Plaintiff,

13         v.                              FINDINGS AND RECOMMENDATIONS,
                                           RECOMMENDING THAT DEFENDANTS'
                                           MOTION TO DISMISS BE DENIED
14   UNITED STATES OF AMERICA,             WITHOUT PREJUDICE
     et al.,                               (Doc. 107.)
15
                Defendants.                OBJECTIONS, IF ANY, DUE IN THIRTY (30)
16                                         DAYS

                                 /
17

18        **Findings and Recommendations on Motion to Dismiss by defendants**
                **The Geo Group,  Andrews, Akanno, Craig,**
19                **Minnecci, Noriega, and  Nichols**

20   **I.      RELEVANT PROCEDURAL HISTORY**

21         Plaintiff is a federal prisoner proceeding pro se and in forma pauperis with this civil action

22   pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and the Federal Torts Claims

23   Act ("FTCA").  Plaintiff filed the complaint initiating this action on June 25, 2002.  Plaintiff named as

24   defendants the United States of America ("USA"), Zachary Currier, Harley Lappin, Newton E. Kendig,

25   Maryellen Thomas, the Geo Group, Inc. (sued as Wackenhut Correctional Corp. ("WCC") and Taft

26   Correctional Institution ("TCI")), Raymond Andrews, Jonathan E. Akanno, Terry Craig, Margaret

27   Minnecci, Esteban Noriega, Geraldine Nichols, Theresa Bucholz, and Suzanne Snellen.

28                                            1

1    This action now proceeds on the Second Amended Complaint filed August 29, 2005, against (1)

2  defendant USA on the FTCA claims; (2) defendants Currier, Lappin, Kendig, and Thomas ("BOP

3  employees") on plaintiff's Eighth Amendment claims, (3) defendants Andrews, Akanno, Craig,

4  Minnecci, Noriega, Nichols, Bucholz, and Snellen ("Taft employees") on plaintiff's Eighth Amendment

5  claims, and (4) Taft employees, TCI, and WCC on plaintiff's tort claims.[1]  (Doc. 72.)

6    On September 8, 2008, defendants The Geo Group, Inc. (sued as WCC and TCI) and some of

7  the Taft employees (Andrews, Akanno, Craig, Minnecci, Noriega, and Nichols) filed a motion to dismiss

8  pursuant to Rule 12(b)(6).  (Doc. 107.)  On January 26, 2009, plaintiff filed an opposition to the motion.

9  (Doc. 119.)  On February 9, 2009, defendants filed a reply to the opposition.  (Doc. 121.)

10 **II.    PLAINTIFF'S ALLEGATIONS AGAINST THE TAFT EMPLOYEES**

11    In the Second Amended Complaint filed August 29, 2005, plaintiff alleges that the Taft

12 employees failed to properly diagnose him with Valley Fever and treat him for the condition.

13    Plaintiff alleges as follows.

14    On July 17, 2001, plaintiff reported to sick call complaining of headaches, shortness of breath,

15 and night sweats.  An x-ray of his chest was taken and he was sent back to his unit.  On July 18, 2001,

16 Dr. Akanno informed him that the x-rays revealed his lungs were nearly filled to the top with something

17 black.  Dr. Akanno prescribed Biaxin and Hytuss and drew blood for testing of Valley Fever and

18 pneumonia.  On July 19, 2001, Dr. Akanno and Nurse Snellen changed plaintiff's medication to

19 Erythromycin, an antibiotic.  When plaintiff asked if he had a bacterial infection, Dr. Akanno said he

20 would not know until the blood test results were returned.

21    On July 20, 2001, plaintiff saw Nurse Nichols at the pill window, complained to her about boils

22 and lesions on his face and body, and told her he was spitting up blood.  Nurse Nichols told him to

23 continue his medication and gargle with salt water, but he was not examined.  On July 25, 2001, Dr.

24 Akanno, Nurse Minnecci, and Nurse Snellen informed him the boils were an allergic reaction to the

25 Erythromycin, but he was not examined and no one cancelled the medicine.  On July 26, 2001, Dr.

26

27    [1]All other claims were dismissed from this action by the Court on July 7, 2008.  (Doc. 90.)

28                                                        2

1  Akanno prescribed Biaxin again, a medication for viral infections, and when plaintiff asked Dr. Akanno

2  if he had a viral infection, the doctor became angry and threw him out.

3         On July 27, 2001, he approached BOP Oversight Specialist Currier and asked him if it was

4  possible to provide the proper medicine for a person if they had an infection in their lungs and it could

5  be either viral, bacterial, or fungal, without results of a blood test, and Currier said "No."

6         Plaintiff went to the hospital on July 27, 2001 and was called into the examination room with

7  Dr. Akanno, Nurse Minnecci, and Lt. Bucholz.  He was examined by Dr. Akanno who advised Nurse

8  Minnecci he was "cleared."  Nurse Minnecci then ordered Lt. Bucholz to take plaintiff to the Special

9  Housing Unit ("SHU") for punishment, for lying to his family and defendant Currier about his medical

10  condition, and he was taken to the SHU.  Warden Andrews, Executive Assistant Craig, Dr. Akanno,

11  Nurse Minnecci, Lt. Bucholz, and Nurse Snellen wrote a false incident report stating that plaintiff's

12  medical file showed Dr. Akanno had diagnosed his illness and plaintiff was given notification of it.

13  Plaintiff sent word to BOP Oversight Specialist Currier about the false incident report, but Currier did

14  not respond back.

15         Plaintiff received no treatment from July 27-30, 2001.  On July 30, 2001, the blood test results

16  were returned from the lab and Dr. Akanno and Lt. Daughty informed him the result was "positive" for

17  coccidioidomycosis and not pneumonia for which he was being treated.  The USA, BOP, WCC, TCI,

18  BOP employees, and Taft employees Andrews, Craig, Minnecci, Snellen, and Bucholz all knew or

19  should have known of his condition on July 30, 2001 and should have treated him for Valley Fever.

20  However, plaintiff remained in the SHU sleeping on the floor without treatment, and Nurse Noriega,

21  who dispensed medication in the SHU, gave him no medication.  Defendants Lappin, Andrews, Kendig,

22  Currier, Akanno, and Minnecci delayed his blood test results, causing progression of his disease past the

23  lungs, based on their policy to obtain authorization from WCC headquarters in Florida and BOP's

24  authorization from Washington, D.C., before he could be properly cared for, treated by a specialist, and

25  admitted to a hospital.  On August 3, 2001, he was taken to see Dr. Mui, an infectious disease specialist,

26  who re-diagnosed him with "disseminated coccidioidomycosis."  Dr. Mui told him the only reason he

27  ///

28
                                                    3

1 hadn't died was that the disease escaped through his skin, which is very, very rare; the disease usually

2 returns back to the already filled lungs and causes death.

3     Warden Andrews did not properly make policy or supervise employees and medical staff at TCI.

4 Dr. Akanno and Nurse Minnecci failed to properly supervise Nurses Snellen, Nichols, and Noriega, who

5 failed to diagnose plaintiff's illness even when boils appeared and the diagnosis was obvious.  Even

6 plaintiff's sister, who is not a nurse or doctor, diagnosed his illness prior to the blood test results and

7 informed the Taft employees and Senator Boxer.

8     As a result of defendants' misconduct, his disease progressed from his lungs to his blood, and

9 now to "systematic coccidioidomycosis" affecting his blood, bones, lymph nodes, and spine, causing

10 holes in "thoracic, cervical, lumbar, and illac."  Plaintiff has a hole and fracture in his left clavicle and

11 requires surgery to remove a large portion of the clavicle joint and breast plate.  Plaintiff suffers

12 continuous severe headaches, numbness and tingling in his right leg from damage to his lower spine, and

13 a severe change in the quality of his life.  His liver has enlarged 2 to 3 centimeters and he now risks liver

14 damage.  If the disease progresses to his central nervous system, research shows a 90% chance of dying

15 within twelve months.  Plaintiff suffers from fear of dying, emotional distress, and pain and suffering.

16 **III.**    **DEFENDANTS' MOTION**

17     **A.**    **Request Based Upon Improper Service**

18     Defendants argue that defendants Snellen, Noriega, Minnecci, Craig, Nichols, Snellen and

19 Bucholz were not properly served, based on the fact that there is no record that any of these defendants

20 executed and returned the waiver of service mailed to them by plaintiff.  As to defendants Snellen and

21 Bucholz, defendants request a court order requiring plaintiff to personally serve or dismiss these two

22 defendants from the complaint.  As to the other unserved defendants – Noriega, Minnecci, Craig and

23 Nichols –  defendants acknowledge that they have voluntarily appeared via the motion to dismiss filed

24 September 8, 2008.

25     Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure,

26 or there is no personal jurisdiction.  Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982), *citing*

27 Beecher v. Wallace, 381 F.2d 372 (9th Cir. 1967).  Rule 4(a) provides that defendants must be

28                        4

1   personally served or served in compliance with alternatives listed in 4(d)(6) or 4(d)(7).  Fed. R. Civ. P.

2   4(a).  Neither actual notice, nor simply naming the person in the caption of the complaint, will subject

3   defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.

4   Jackson, 682 F.2d at 1347 (*internal citations omitted*).  However, defendants can waive the defect of

5   lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary

6   motion of in a responsive pleading; jurisdiction attaches if a defendant makes a voluntary general

7   appearance as by filing an answer through an attorney.  Id. (*internal citations omitted*).  A general

8   appearance or responsive pleading by defendant that fails to dispute personal jurisdiction will waive any

9   defect in service or personal jurisdiction.  Fed. R. Civ P. 12(h)(1);  Benny v. Pipes, 799 F.2d 489, 492

10  (9th Cir. 1986).

11          Defendants are advised that defendants Bucholz and Snellen have already appeared in this action.

12  A review of the court's record shows that on February 19, 2004, defendants Andrews, Akanno, Craig,

13  Minnecci, Bucholz, Snellen, Noriega, and Nichols filed an answer to the First Amended Complaint in

14  this action through attorney Dawn Bittleston.  (Doc. 47.)  These defendants did not raise any affirmative

15  defense in their answer as to insufficiency of service or any other jurisdictional defense.  In fact, they

16  expressly admitted that the court has jurisdiction.  (Doc. 47 at 2 ¶1.)  Based on this record, the court

17  finds that defendants Andrews, Akanno, Craig, Minnecci, Bucholz, Snellen, Noriega, and Nichols

18  waived any defect in service in this action when they filed their answer on February 19, 2004.  Therefore,

19  defendants' request for the court to order plaintiff to personally serve defendants Bucholz and Snellen

20  or dismiss them from this action should be denied.

21          **B.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

22                  **1.      Legal Standard**

23          "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider v. California Dept.

24  of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  "Rule 8(a)'s simplified pleading standard applies to

25  all civil actions, with limited exceptions," none of which applies to section 1983 actions.  Swierkiewicz

26  v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a).  Rule 8(a) requires "a short and plain

27  statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  "Such

28                                                          5

1    a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds

2    upon which it rests." Swierkiewicz, 534 U.S. at 512.  A court may dismiss a complaint only if it is clear

3    that no relief could be granted under any set of facts that could be proved consistent with the allegations.

4    Id. at 514.  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

5    entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that

6    a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th

7    Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d

8    1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the

9    claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).

10            **2.        Defendants' Argument – *Bivens* Cannot Be Asserted Against Taft
               Employees Because Alternative State Remedies Are Available**

11

12            The court has a statutory duty to screen complaints in cases such as this and dismiss any claims

      that fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.
13
      Plaintiff's claims were reviewed for sufficiency at the pleading stage, and the court found that the
14
      potential Eighth Amendment claims against the Taft employees should not be summarily dismissed,
15
      because courts are evenly divided on the question whether a Bivens action is available against employees
16
      of a privately-operated prison.  The Taft employees were invited to file a response providing their
17
      position on whether a Bivens action is available against them and whether plaintiff has any alternative
18
      remedies under state law.  (Doc. 83.)
19
              Now, defendants move for dismissal of the Bivens claim against the Taft employees on the
20
      grounds that the Supreme Court has refused to extend a Bivens remedy to suits against private entities,
21
      and courts of appeal have refused to extend Bivens to actions against employees of a privately operated
22
      federal prison when alternative remedies are available.  Defendants argue that in the instant action,
23
      plaintiff has alternative remedies because he has the ability to assert state tort claims against the Taft
24
      employees for negligence in connection with his medical care.  Defendants support their argument by
25
      noting that on July 7, 2008, the court ordered that this action proceed on plaintiff's state tort claims
26
      against the Taft employees.  Defendants cite no law or analysis to support their conclusion.
27

28                                                          6

1    Plaintiff responds to the motion to dismiss, stating that he is not proceeding against defendants

2  pursuant to Bivens.  In contrast, however, plaintiff also states that he can support his Eighth Amendment

3  claims of deliberate indifference and should be allowed to proceed against the Taft employees for

4  inadequate medical care.

5    Defendants reply that plaintiff fails to show a basis for recovery against the Geo Group or the

6  Taft employees under the Eighth Amendment.

7    The court concurs with defendants' argument that the Supreme Court has refused to extend a

8  Bivens remedy to suits against private entities.  Correctional Services Corp. v. Malesko, 534 U.S. 61,

9  62 (2001).  Recently, the Court stated, "We have seen no case for extending Bivens claims against . .

10  . private prisons."  Wilkie v. Robbins, 551 U.S. 537 (2007) (citations omitted).  However, the Supreme

11  Court has never addressed the issue of a federal prisoner's right to a Bivens action against prison guards

12  and employees at a private prison.

13    The Court also concurs with defendants' argument that courts of appeal have thus far held that

14  the availability of a Bivens action against a private prison employee is premised on whether there is

15  another remedy available against the private prison employee, as shown in the following opinions.

16    In Peoples v. Corrections Corp. of America, the plaintiff was housed at CCA, a private Maryland

17  corporation under contract with the United States Marshals Service.  Peoples v. Corrections Corp. of

18  America, 2004 WL 2278667, *1 (D.Kan. 2004).  The plaintiff claimed that officers of CCA violated his

19  due process rights as a pretrial detainee by placing and keeping him in segregation, denying him access

20  to a law library or legal resources, and denying him unmonitored phone calls to his attorney.  Id. at *4.

21  The district court found that it was unlikely that the plaintiff had a Bivens action against an individual

22  employee of a federal contractor where alternative remedies, including state tort action, were available.

23  Id. at *3 -4.  On appeal, the majority of a divided Tenth Circuit panel held that "federal prisoners have

24  no implied right of action for damages against an employee of a privately operated prison under contract

25  with the United States Marshals Service when state or federal law affords the prisoner an alternative

26  cause of action for damages for the alleged injury."  Peoples v. CCA Detention Centers, 422 F.3d 1090,

27  ///

28                                                     7

1108 (10th Cir. 2005).  However, an en banc panel of the Tenth Circuit could not reach agreement on

this issue, and held as follows:

> We are evenly divided, however, for substantially the same reasons as are set forth in the panel's majority and dissenting opinions, on the question whether a Bivens action is available against employees of a privately-operated prison.  Because there is no majority on the en banc panel, the district court's ruling in Peoples II on this issue is affirmed by an equally divided court.

Peoples v. CCA Detention Centers, 449 F.3d 1097, 1099 (10th Cir. 2006)(en banc).  Thus, in the Tenth

Circuit, based on the district court's opinion, it is unlikely that a federal prisoner has a Bivens action

against an employee of a federal contractor if alternative remedies are available.

The Fourth Circuit reached a similar position in Holly v. Scott, 434 F.3d 287 (4th Cir. 2006).

In Holly, the Fourth Circuit found that an "inmate in a privately run federal correctional facility does not

require a Bivens cause of action where state law provides him with an effective remedy."  Id. at 296.

In making this finding, the Fourth Circuit noted that such an inmate would enjoy state law claims that

a federal prisoner would not.  Id. at 296-97.

Defendants cite a recent decision by the Eleventh Circuit in Alba v. Montford, 517 F.3d 1249

(11th Cir. 2008).  Here, as in the instant action, plaintiff was a federal prisoner incarcerated in a privately

operated correctional facility and filed a pro se civil rights complaint against employees of the prison

for allegedly violating his Eighth Amendment right to medical treatment.  The district court dismissed

the action, on the grounds that plaintiff failed to state a claim for relief under Bivens because plaintiff

had adequate state court remedies.  On appeal, plaintiff made two arguments -- first, that Defendants

acted under color of federal law, and therefore, were government actors for purposes of Bivens liability,

and second, that no meaningful alternative remedies exist.  The Eleventh Circuit panel held that even

assuming, without deciding, that plaintiff's first argument is correct -- that CCA, the privately operated

correctional facility, is a government actor for purposes of Bivens liability -- plaintiff was foreclosed

from proceeding with a Bivens action against the CCA employees because a meaningful alternative

remedy existed via a state tort action.

The Ninth Circuit Court of Appeals, upon whom this court relies, has not addressed this specific

issue.  However, assuming that a Bivens action may be available in this circuit against employees of a

1    privately-run prison, the question remains whether a negligence claim is a meaningful remedy for

2    plaintiff in this action.  A <u>Bivens</u> remedy will not lie when an alternative remedy is both 'explicitly

3    declared to be a substitute' and 'viewed as equally effective." <u>Carlson v. Green</u>, 446 U.S. 14, 18-19

4    (1980); <u>Castaneda v. United States of America</u>, 546 F.3d 682, 688 (9th Cir. 2008).  Defendants have not

5    addressed which negligence cause(s) of action can be brought by plaintiff or how a negligence action

6    is an equally effective remedy.  Defendants have not addressed whether the immunities under California

7    Government Code § 845.6 are available to the Taft employees.  An alternative remedy for plaintiff with

8    impermeable affirmative defenses is not a meaningful remedy.  Because defendants have not shown that

9    plaintiff has meaningful alternative state law causes of action available for his alleged injuries, the Court

10   will not dismiss plaintiff's claims at this time.  The motion to dismiss shall be denied without prejudice,

11   and any further motion should include a discussion of California immunities.

12   **IV.     CONCLUSION AND RECOMMENDATIONS**

13         Based on the foregoing, the court RECOMMENDS that:

14         1.      Defendants' request for the court to order plaintiff to personally serve defendants

15                 Bucholz and Snellen or dismiss them from this action be DENIED; and

16         2.      The motion to dismiss filed on September 8, 2008, by defendants The Geo Group, Inc.,

17                 Andrews, Akanno, Craig, Minnecci, Noriega, and Nichols, be DENIED without

18                 prejudice.

19         The Court HEREBY ORDERS that these Findings and Recommendations be submitted to the

20   United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636

21   (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern

22   District of California.  Within THIRTY (30) days after being served with a copy of these Findings and

23   Recommendations, any party may file written Objections with the Court and serve a copy on all parties.

24   Such a document should be captioned "Objections to Magistrate Judge's Findings and

25   Recommendations."  Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days

26   (plus three days if served by mail) after service of the Objections.  The Court will then review the

27   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to

28                                            9

1   file Objections within the specified time may waive the right to appeal the Order of the District Court.

2   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3

4           IT IS SO ORDERED.

5           **Dated:**   **July 30, 2009**                    /s/ **Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                      10