UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEVIN WALKER, | ) | 1:02-cv-05801-AWI-GSA-PC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING FEDERAL |
| | ) | DEFENDANTS' MOTION TO DISMISS |
| vs. | ) | (Doc. 108) |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | ORDER DISMISSING DEFENDANTS |
| | ) | USA, CURRIER, LAPPIN, KENDIG, |
| | ) | AND THOMS FROM THIS ACTION |
| Defendants. | ) | |

**I.    RELEVANT PROCEDURAL HISTORY**

Plaintiff, Kevin Walker ("Plaintiff") is a federal prisoner proceeding pro se with this civil action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). Plaintiff filed the complaint initiating this action on June 25, 2002. Plaintiff names as defendants the United States of America ("USA"), Zachary Currier, Harley Lappin, Newton E. Kendig, Maryellen Thomas[1], the Geo Group, Inc. (sued as Wackenhut Correctional Corp. ("WCC") and Taft Correctional Institution ("TCI")), Raymond Andrews, Jonathan E. Akanno, Terry Craig, Margaret Minnecci, Esteban Noriega, Geraldine Nichols, Theresa Bucholz, and Suzanne Snellen.

This action now proceeds on the Second Amended Complaint ("SAC") filed August 29, 2005,

---

[1] Plaintiff sued defendant as Maryellen Thomas; however, defendants identify her as MaryEllen Thoms. (MTD, Doc. 108-2 at 27:2-7.) The Court shall identify her hereinafter as MaryEllen Thoms.

1

against (1) defendant USA on Plaintiff's FTCA claims; (2) defendants Currier, Lappin, Kendig, and Thoms ("Bureau of Prisons ('BOP') employees") on Plaintiff's Eighth Amendment claims, (3) defendants Andrews, Akanno, Craig, Minnecci, Noriega, Nichols, Bucholz, and Snellen ("Taft employees") on Plaintiff's Eighth Amendment claims, and (4) Taft employees, TCI, and WCC on Plaintiff's tort claims.[2]  (Doc. 72.)

On September 8, 2008, Federal Defendants USA, Lappin, Kendig, Thoms, and Currier ("Defendants") filed a motion to dismiss and/or for summary judgment, pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 56.  (Doc. 108.)  On January 26, 2009, Plaintiff filed an opposition to the motion.  (Doc. 120.)  On February 12, 2009, Defendants filed a reply to the opposition.  (Doc. 122.)  On March 20, 2009, Plaintiff filed a surreply, which was stricken by the Court on April 17, 2009.  (Docs. 125, 126.)  On June 23, 2009, the Court issued a Second Informational Order informing Plaintiff of the summary judgment requirements, and granted Plaintiff leave to file a further opposition to Defendants' motion to dismiss.[3]  (Docs.127, 128.)  On July 27, 2009, Plaintiff filed a further opposition. (Doc. 129.)  On August 3, 2009, Defendants filed a reply to Plaintiff's further opposition.  (Doc. 131.)  Defendants' motion to dismiss is now before the Court.

## II. MOTION BY DEFENDANT USA

Defendant USA brings a motion to dismiss the FTCA claim, based on Plaintiff's failure to exhaust administrative remedies, and because the decision to transfer Plaintiff to TCI falls within the discretionary function exception to the FTCA, 28 U.S.C. § 2675.

### A. Plaintiff's Allegations Against Defendant USA

Plaintiff's action presently proceeds against the USA on a negligence claim brought under the FTCA, with regard to Plaintiff's allegation that he was transferred by the BOP to a facility that was constructed by the United States with knowledge that the soil upon which it was built was contaminated

---

[2] All other claims were dismissed from this action by the Court on July 7, 2008.  (Doc. 90.)

[3] Thus, Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on June 23, 2009.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

2

with fungal spores known to cause Valley Fever. Plaintiff alleges that on December 8, 1999, he arrived at TCI, a correctional facility owned by the BOP, operated by WCC, and located in the city of Taft, in the San Joaquin Valley of California. Plaintiff maintains that San Joaquin Valley soil is known to carry coccidioidomycosis fungal spores, which cause Valley Fever. Plaintiff alleges that defendant USA knew about the presence of the fungal spores when the prison began accepting federal inmates at TCI in late 1997, but nothing was done to prevent inmates from being exposed to Valley Fever. Plaintiff maintains that dark-skinned persons are more susceptible to the worst cases of Valley Fever, and defendant USA transferred Plaintiff, a dark-skinned African-American, to TCI with disregard to his health and safety. Plaintiff alleges that as a result of defendant USA's negligence, he contracted Valley Fever. Plaintiff requests injunctive relief and monetary damages.

### B.   FTCA Claim -- Failure to Exhaust

#### 1.   Legal Standards

##### a.   Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). As a result, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction." Id. (citations omitted). Rule 12(b)(1) of the Federal Rules of Civil Procedure permits dismissal for lack of subject matter jurisdiction. In a facial attack, the allegations in Plaintiff's complaint are taken as true and all reasonable inferences are drawn in his favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). Further, the complaint must be construed liberally because Plaintiff is proceeding pro se. Id.

##### b.   FTCA's Administrative Claim Requirement

"The FTCA is a limited waiver of sovereign immunity, authorizing suit against the United States for tortious performance of governmental functions in limited cases," Bibeau v. Pacific Northwest Research Found., Inc., 339 F.3d 942, 945 (9th Cir. 2003), and the waiver "is strictly construed in favor of the sovereign . . . ," FDIC v. Craft, 157 F.3d 697, 707 (9th Cir. 1998). A suit may not be instituted against the United States under the FTCA unless the claim is first presented to the appropriate federal agency and one of the following conditions is met: the claim is finally denied, or six months have passed

3

without a final resolution having been made. 28 U.S.C. § 2675(a). The claim presentation requirement is a jurisdictional prerequisite to bringing suit and must be affirmatively alleged in the complaint. Gillispie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980). An action filed before the claim has been denied by the appropriate agency is premature and must be dismissed . . . even if the agency ultimately denies the claim before any real progress is made in the lawsuit. McNeil v. United States, 508 U.S. 106, 111-112 (1993). A tort claim against the United States is forever barred unless it is presented in writing to the appropriate Federal agency within two years after the claim accrues, or unless the complaint is filed within six months after the administrative claim is denied. 28 U.S.C. § 2401(b); Dyniewicz v. U.S., 742 F.2d 484, 485 (9th Cir. 1984).

**2.     Motion**

Defendant USA moves to dismiss Plaintiff's tort claim brought under the FTCA,[4] on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing the immediate action on June 25, 2002. Defendant USA states that although Plaintiff filed over thirty-five administrative tort claims, only one of those claims, tort claim TRT-WXR-2003-02678, filed on May 23, 2003, alleged the BOP was negligent for transferring Plaintiff to TCI. Declaration of Maria Syed ("Syed Decl."), Doc. 108-13 at ¶¶3, 6 & Ex. C. The claim was denied on July 10, 2003. Id. at §7 & Ex. D.

Plaintiff filed a verified opposition to defendant USA's motion on January 26, 2009.[5] (Doc. 120.) First, Plaintiff responds that Exhibit H-1 to the SAC shows that he timely filed his tort claim on December 14, 2001, which was denied on December 21, 2001. P's Opp, Doc. 120 at 11 ¶38; SAC at

---

[4] As discussed above, the Court dismissed all of Plaintiff's claims against the USA except the negligence claim brought under the FTCA which concerns Plaintiff's allegation that he was transferred by the BOP in 1999 to TCI, a facility that was constructed by the United States with knowledge that the soil upon which it was built was contaminated with fungal spores known to cause Valley Fever.

[5] Defendants argue that Plaintiff's claims in his opposition are not evidence, because his opposition does not include an affidavit. However, the Declaration Under Penalty of Perjury at the end of Plaintiff's Opposition, serves to verify the statements in the Opposition. (Doc. 120 at 33.) Plaintiff's signed declaration, dated January 19, 2009, states "I, Kevin Jessie Walker, verifies (sic) under penalty of perjury pursuant to 28 U.S.C. § 1746(2) that the foregoing is true and correct." Id.

4

Ex. H-1.[6]  In the alternative, Plaintiff argues that he is excused from not exhausting before he filed the lawsuit due to special circumstances and equitable tolling, because he filed administrative remedies as soon as he was able.  He states that he was so ill while he was in the hospital that he didn't know where he was; he was not well informed about Valley Fever until December 2001; he was confined in the Security Housing Unit ("SHU"); and the BOP purposely confused him about the administrative remedy process.  Id. at 8 ¶25, 11 ¶42, 12 ¶50,13 ¶ 52; SAC at Ex. H-1. Plaintiff claims that in December 2001, the BOP told him his placement with WCC denied him access to the process, and there was no appropriate channel in BOP policy for filing administrative remedies after his transfer from TCI to FMC Fort Worth.  Id. at 12 ¶¶44, 50-51, 13 ¶53; SAC at Ex. H-1.  Plaintiff claims that in May 2003, the Executive Assistant at FMC Ft. Worth Dallas Unit told him "he would not answer any of the BP-9's because they were asking for monetary damages," "he would not answer any of the BP-8's as long as money is attached," and told plaintiff "not to file anything else." SAC at 35.  Third, Plaintiff maintains that imposing total exhaustion of all claims is not required by the Prison Litigation Reform Act ("PLRA").  P's Opp, Doc. 120 at 12 ¶49.  Finally, Plaintiff claims that because he is still being treated for Valley Fever and the damage is still continuing, there is no accrual issue, and the "continuing damages doctrine" applies.  Id. at 13 ¶56.

Defendant USA replies that Plaintiff has not disputed that his administrative claim TRT-WXR-2003-02678, filed on May 23, 2003, is the only one that alleged the BOP was negligent in transferring him to TCI in 1999.  D's Reply, Doc. 122 at 7:14-16; Syed Decl., Doc. 108-13 ¶6 & Ex. C.  The USA also asserts there can be no dispute that the present action was filed on June 25, 2002.  D's Reply at 7:16-17. Further, defendant USA argues that Plaintiff's references to the December 2001 administrative claim is irrelevant because the December 2001 claim did not refer to a negligent transfer to TCI in 1999, but rather to medical treatment Plaintiff received at TCI and TCI's failure to prevent Valley Fever.  Id. at 7:22-28; Syed Decl ¶4 & Ex. A.  With regard to Plaintiff's claim of special circumstances, the USA argues that Plaintiff continues to focus erroneously on the December 2001 claim which is irrelevant to

---

[6] Where the pagination on Plaintiff's Opposition differs from the pagination on the Court's electronic record, the Court uses the pagination from the Court's record.

whether Plaintiff properly exhausted his administrative remedies prior to bringing his FTCA action. Id. at 8:2-7. As for equitable tolling, the USA argues that the Ninth Circuit has held that equitable tolling does not apply to the jurisdictional requirements under the FTCA. Id. at 8:16-19.

In his further opposition filed July 27, 2009, Plaintiff discusses his medical services claims and the public function doctrine, but not the FTCA claims against the USA. Defendants respond that Plaintiff's further opposition does not raise any arguments germane to the Federal Defendants' motion, Plaintiff has not stated a claim against the United States with respect to the provision of medical services, and the "public function" exception does not relate to any claims against the Federal Defendants.

### 3. Discussion

There is no evidence that Plaintiff filed any administrative claim with the appropriate agency concerning his FTCA claim against the USA before he filed the instant lawsuit on June 25, 2002. Plaintiff's claim at Exhibit H-1 is irrelevant to his argument that he filed a timely FTCA administrative claim, because that claim, filed on December 14, 2001, does not concern Plaintiff's allegation that he was negligently transferred to TCI in 1999. Therefore, the Court finds that Plaintiff failed to exhaust administrative remedies before filing this lawsuit, as required under 28 U.S.C. §2675(a). As a result, the FTCA claim is premature and must be dismissed.

Plaintiff's argument that he should be excused from not exhausting before he filed the lawsuit because of special circumstances and equitable tolling is without merit. The purpose of equitable tolling is "to stop a limitations period from continuing to run after it has already begun to run." Scoop-Gonzalez v. Immigration and Naturalization Serv., 272 F.3d 1176, 1184 (2001) (internal quotations and citation omitted). Stopping or extending the time period for Plaintiff to exhaust cannot change the fact that he filed his complaint on June 25, 2002, before exhausting remedies. Plaintiff's term in the SHU could not have prevented him from exhausting remedies before June 25, 2002, because the SHU term

6

lasted only until August 3, 2001.[7] Evidence that Plaintiff was deathly ill, or that he was not knowledgeable about his illness, cannot excuse him from exhausting before June 25, 2002, because Plaintiff acknowledges that by December 2001 he was informed about Valley Fever and filed an administrative claim regarding his medical care.

Plaintiff argues that the BOP purposely confused him about the remedy process in December 2001 and May 2003. In December 2001, Plaintiff was housed at FMC Fort Worth, a BOP facility. Plaintiff's evidence shows that on December 21, 2001, he was advised by Western Regional Counsel that his December 14, 2001 claim was denied because claims against individual TCI employees cannot be considered under the provisions of the Federal Tort Claims Act. Plaintiff was also advised that "[Agencies of the United States may consider claims for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency which acting within the scope of his office or employment." SAC at Ex. H-1. The Court finds no evidence that the BOP intended to confuse Plaintiff by this advice. In fact, such advice was beneficial to Plaintiff and should have assisted him in filing an appropriate claim. If Plaintiff was confused, he has not demonstrated that the BOP intended to confuse him. As for the BOP's interference in May 2003, such conduct, even if true, cannot excuse the fact that Plaintiff filed his complaint on June 25, 2002, before exhausting remedies.

Plaintiff argues that in Jones v. Bock, the Supreme Court held that imposing total exhaustion of all claims is not required by the PLRA. Jones v. Bock, 549 U.S. 199 (2007). Plaintiff misreads Bock, in which the Supreme Court held that under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion *in their complaints*." Id. at 216 (emphasis added). Regardless, Bock is inapplicable here because Plaintiff's pending claim against the USA was brought under the FTCA, and exhaustion of FTCA claims is not governed by the PLRA.

Plaintiff also claims that because he is still being treated for Valley Fever and the damage is still

---

[7] Plaintiff was confined in the SHU from July 27, 2001 until August 3, 2001. P's Opp'n, Doc. 120 at 11 ¶42; SAC at 6-7 ¶¶32-34, 7-8 ¶37.

7

continuing, there is no accrual issue, and the "continuing damages doctrine" applies. Plaintiff's argument appears to be based on the premise that the negligence claim, based on his placement at TCI, will not accrue under the FTCA as long as he continues to suffer injuries caused by Valley Fever or by inadequate medical treatment. The "continuing wrong" doctrine is defined by this Circuit as involving "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." Nesovic v. U.S., 71 F.3d 776, 778 (9th Cir. 1995)(quoting Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 558, 597 (9th Cir. ), cert denied, 498 U.S. 824 (1990). A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation. Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) (continuing non-employment resulting from an original action is not a continuing violation). Plaintiff's argument fails because the alleged negligent act, the decision to place him at TCI, was a single act. Regardless, the date of accrual of the claim is irrelevant to whether Plaintiff exhausted his remedies before filing the lawsuit on June 25, 2002.

Based on the finding that Plaintiff's FTCA claim against defendant USA is premature and must be dismissed, the Court shall not address defendant USA's argument that the decision to transfer Plaintiff to TCI falls within the discretionary function exception to the FTCA.

**C.   FTCA Claim - Dismissal With Prejudice**

The USA argues that Plaintiff's FTCA claim should be dismissed *with prejudice* because his suit is forever barred under 28 U.S.C. § 2401(b) for failure to file suit within six months after denial of the claim. 28 U.S.C. § 2401(b) provides:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). The six-month statute of limitations in § 2401(b) is jurisdictional, and failure to file a claim within that time period deprives the federal courts of jurisdiction. Marley v. U.S., 567 F.3d 1030, 1038 (9th Cir. 2009). Accordingly, the doctrines of equitable estoppel and equitable tolling do not apply. Id.

Defendant USA presents evidence that since filing the present lawsuit on June 25, 2002, Plaintiff has proceeded to file in excess of thirty-five administrative tort claims. MTD, Doc. 108-2 at 11:23-24; Syed Decl., Doc. 108-13 at ¶3. The USA maintains that only one of those claims, tort claim TRT-WXR-2003-02678, filed May 23, 2003, alleged the BOP was negligent for designating Plaintiff to TCI. MTD at 11:24-26; Syed Decl. at ¶6 & Exh. C. This claim was denied on July 10, 2003. MTD at 11:26-27; Syed Decl. at Ex. D. There is no evidence that Plaintiff filed a lawsuit based on this claim after the claim was denied.

As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. McNeil v. United States, 508 U.S. 106, 113 (1993). A lawsuit filed prior to the exhaustion of a claimant's administrative claim is premature and must be dismissed. Id. Pursuant to 28 U.S.C. § 2675(a), an action shall not be instituted upon a claim against the United States for money damages for an employee's negligence unless the claimant has first presented the claim to the appropriate Federal agency and his claim was finally denied by the agency in writing and sent by certified or registered mail. 28 U.S.C. § 2675(a)

As "a general rule, a premature "complaint cannot be cured through amendment, but instead, plaintiff must file a new suit." Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999) (quoting Sparrow v. USPS, 825 F.Supp. 252, 255 (E.D.Cal.1993). "Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." Duplan, 188 F.3d at 1199. Numerous District Court have followed this approach and found that courts lacks subject matter jurisdiction if an action was commenced before the exhaustion requirement was satisfied, and the action should be dismissed without leave to amend even if exhaustion has now occurred. See, e.g., Plante v. U.S., 2009 WL 2045692, *2 (S.D.Cal. 2009); Soto v. U.S., 2007 WL 2601411, 3 (E.D.Cal. 2007); Gaerman v. F.B.I., 2003 WL 23537963, 2 (D.Or. 2003). Thus, the court must dismiss the claim without leave to amend.

9

1            Plaintiff offers no valid argument or evidence in opposition to defendant USA's evidence. Plaintiff's argument that he should be excused because of special circumstances and equitable tolling fails. In certain circumstances, a late filing of a claim may not be fatal, as a court may employ equitable doctrines to excuse a claimant's tardiness. Marley, 567 F.3d at 1034. However, the Ninth Circuit has long held that "the timing requirement contained in § 2401(b) is jurisdictional and is 'subject neither to estoppel principles nor to equitable considerations.'" Id. (quoting Bert v. V.A. Hospital, 860 F.2d 338, 340 (9th Cir. 1988)). Therefore, equitable doctrines such as special circumstances and equitable tolling do not excuse Plaintiff's failure to meet the timely filing requirements of § 2401(b).

           Plaintiff's argument that the BOP interfered with the administrative remedy process in December 2001 and May 2003, even if true, cannot excuse Plaintiff's failure to file a lawsuit after he successfully completed the administrative process in July 2003.

           Plaintiff also argues that because he is still being treated for Valley Fever and his injuries are continuing, there is no accrual issue under § 2401(b), and the "continuing damages doctrine" applies. As discussed above, a "continuing damages" or "continuing wrong" doctrine is not applicable to Plaintiff's negligence claim. FTCA claims accrue as a matter of federal law "when a plaintiff knows that he has been injured and who has inflicted the injury." Winter v. United States, 244 F.3d 1088, 1090 (9th Cir. 2001). The fact that Plaintiff filed his May 23, 2003 FTCA claim proves that Plaintiff knew in May 2003 that he had contracted Valley Fever and that the USA was at fault. Therefore, Plaintiff's FTCA claim against the USA accrued on or before May 23, 2003.

           "Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988). However, in Frigard, where the bar of sovereign immunity was absolute, no court had power to hear it, and plaintiffs could not amend their complaint to avoid the sovereign immunity bar, the Ninth Circuit found that the district court did not abuse its discretion in dismissing the action with prejudice. Id. Here, further suit based on plaintiff's FTCA claim is forever barred under 28 U.S.C. § 2401(b), because plaintiff failed to file suit within six months after July 10, 2003, when his claim was denied. Plaintiff cannot amend the present complaint to avoid the sovereign immunity bar,

because amendment will not change the fact the complaint was filed before the claim was denied. See Fed. R. Civ. P. 15(c). Therefore, the court may properly dismiss the FTCA claims with prejudice.

### III.   MOTION BY INDIVIDUAL FEDERAL DEFENDANTS

Individual Federal Defendants/BOP employees Harley Lappin, Dr. Newton Kendig, M.D., MaryEllen Thoms, and Zachary Currier bring a motion to dismiss and/or for summary judgment with regard to the Bivens claims against them, because the Court lacks jurisdiction over those claims and they fail as a matter of law, for the following reasons: First, Plaintiff's allegations against the BOP employees in their official capacities fail. Second, Plaintiff's claims are all premised on supervisory liability, for which he fails to state a claim. Third, Plaintiff failed to exhaust administrative remedies before filing his Bivens claims. Fourth, the BOP employees are entitled to judgment on the Bivens claims because it is undisputed that they lacked the requisite knowledge to establish deliberate indifference. Fifth, the Bivens claims fail because each of the BOP employees is entitled to qualified immunity. Finally, with respect to defendant MaryEllen Thoms, Plaintiff's claim against her should be dismissed for failure to substitute under Rule 25 of the Federal Rules of Civil Procedure.

####     A.    Plaintiff's Allegations Against Individual Federal Defendants

Plaintiff's action presently proceeds under Bivens against the Individual Federal Defendants/BOP employees Lappin, Kendig, Thoms, and Currier, for violation of Plaintiff's rights under the Eighth Amendment, based on Plaintiff's allegations that they failed to provide adequate medical care to Plaintiff. Plaintiff alleges as follows.

On July 17, 2001, Plaintiff reported to sick call complaining of headaches, shortness of breath, and night sweats. An x-ray of Plaintiff's chest was taken and he was sent back to his unit.

On July 18, 2001, Dr. Akanno informed Plaintiff that the x-rays revealed his lungs were nearly filled to the top with something black. Dr. Akanno prescribed the medications Biaxin and Hytuss and drew blood for testing of Valley Fever and pneumonia.

On July 19, 2001, Dr. Akanno and Nurse Practitioner Snellen changed Plaintiff's medication to Erythromycin, an antibiotic. When Plaintiff asked if he had a bacterial infection, Akanno said he would not know until the blood test results were returned.

On July 20, 2001, Plaintiff saw Nurse Nichols at the pill window, complained to her about boils and lesions on his face and body, and told her he was spitting up blood. Nichols told Plaintiff to continue his medication and gargle with salt water, but he was not examined.

On July 25, 2001, Dr. Akanno, Nurse Minnecci, and Nurse Snellen informed Plaintiff the boils were an allergic reaction to the Erythromycin, but he was not examined and no one cancelled the medicine.

On July 26, 2001, Dr. Akanno prescribed Biaxin again, a medication for viral infections, and when Plaintiff asked Dr. Akanno if he had a viral infection, the doctor became angry and threw him out.

On July 27, 2001, Plaintiff approached BOP Oversight Specialist Currier and asked him if it was possible to provide the proper medicine for a person if they had an infection in their lungs and it could be either viral, bacterial, or fungal, without results of a blood test, and Currier said "No."

Plaintiff went to the hospital on July 27, 2001 and was called into the examination room with Dr. Akanno, Nurse Minnecci, and Lt. Bucholz. Plaintiff was examined by Dr. Akanno who advised Nurse Minnecci he was "cleared." Nurse Minnecci then ordered Lt. Bucholz to take Plaintiff to the SHU for punishment and for lying to his family and defendant Currier about his medical condition, and he was taken to the SHU.

Warden Andrews, Executive Assistant Craig, Dr. Akanno, Nurse Minnecci, Lt. Bucholz, and Nurse Snellen wrote a false incident report stating that Plaintiff's medical file showed Dr. Akanno had diagnosed his illness and Plaintiff was given notification of it. Plaintiff sent word to BOP Oversight Specialist Currier about the false incident report, but Currier did not respond back. Plaintiff received no treatment from July 27-30, 2001.

On July 30, 2001, the blood test results were returned from the lab, and Dr. Akanno and Lt. Daughty informed Plaintiff the result was "positive" for coccidioidomycosis and not pneumonia for which he was being treated.

Plaintiff alleges the BOP employees knew or should have known of his condition on July 30, 2001 and should have treated him for Valley Fever. Instead, Plaintiff remained in the SHU sleeping on the floor without treatment. Plaintiff alleges that the BOP employees delayed his blood test results,

12

causing progression of his disease past the lungs, based on their policy to obtain authorization from WCC headquarters in Florida and BOP authorization from Washington, D.C., before he could be properly cared for, treated by a specialist, and admitted to a hospital.

On August 3, 2001, Plaintiff was taken to see Dr. Mui, an infectious disease specialist, who diagnosed him again with "disseminated coccidioidomycosis." Dr. Mui told him the only reason he hadn't died was that the disease escaped through his skin, which is very, very rare; the disease usually returns back to the already filled lungs and causes death.

Plaintiff alleges that as a result of the BOP employees' misconduct, his disease progressed from his lungs to his blood, and now to "systematic coccidioidomycosis," affecting his blood, bones, lymph nodes, and spine, and causing holes in "thoracic, cervical, lumbar, and illac." Plaintiff has a hole and fracture in his left clavicle and requires surgery to remove a large portion of the clavicle joint and breast plate. Plaintiff suffers from continuous severe headaches, numbness and tingling in his right leg from damage to his lower spine, and a severe change in the quality of his life. Plaintiff's liver has enlarged two to three centimeters and he now risks liver damage. If the disease progresses to Plaintiff's central nervous system, research shows a 90% chance of dying within twelve months. Plaintiff suffers from fear of dying, emotional distress, and pain and suffering. Plaintiff requests injunctive relief and monetary damages.

**B.     Bivens Claim - Failure to Exhaust**

The Court first addresses the BOP defendants' argument that Plaintiff failed to exhaust administrative remedies before filing his Bivens claims. See Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust).

**1.     Legal Standards**

**a.     PLRA Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

13

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to private prisons. Roles v. Maddox, 439 F.3d 1016, 1017-18 (9th Cir. 2006). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life, including those filed by federal prisoners under Bivens. Porter v. Nussle, 435 U.S. 516, 532 (2002) (federal prisoners suing under Bivens must first exhaust inmate grievance procedures; administrative exhaustion is prerequisite even if administrative remedies are not plain, speedy, and effective, and relief inmate seeks is not available). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth, 532 U.S. at 741. "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83-84.

The Court takes judicial notice of the fact that the BOP has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq. First, an inmate must attempt to resolve the issue informally by presenting it to staff. 28 C.F.R. § 542.13 (1999). An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution. Id. If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request ("ARR"). 28 C.F.R. § 542.14 (1999). The deadline for completion of informal resolution and submission of a formal written ARR, on the appropriate form (BP-9), is twenty calendar days following the date on which the basis for the ARR occurred. Id. Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the BOP. 28 C.F.R. § 542.15 (1999). The Regional Director's decision may be appealed to the General Counsel in Washington, D.C. Id. Appeal to the General Counsel is the final step in the administrative remedy process. Id.

The Court also takes judicial notice of the fact that TCI has established a two-step institutional

remedy process to comply with the Code of Federal Regulations. Step 1 relates to the informal resolution process set forth in § 542.10. Step 2 corresponds to the initial formal filing of the ARR set forth in § 542.14. At the conclusion of this process, a prisoner may appeal the decision to the Regional Director, and then the General Counsel as set forth above. Only after exhausting this process should a prisoner file an action in the United States District Court.

### b. Unenumerated Rule 12(b) Motion

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Bock, 549 U.S. 199 ; Wyatt, 315 F.3d at 1119. The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

### 2. Motion

Individual Federal Defendants/BOP employees Harley Lappin, Dr. Newton Kendig, M.D., MaryEllen Thoms, and Zachary Currier move to dismiss Plaintiff's constitutional tort claims under Bivens against them based on Plaintiff's failure to exhaust administrative remedies on those claims, because he failed to submit any written request for resolution while at TCI, and the only request he submitted regarding medical treatment prior to the lawsuit did not comply with BOP regulations and was not exhausted. The BOP employees present evidence that in December 2001, Plaintiff filed an ARR directly with the Western Regional Office relating to his medical treatment at TCI. MTD, Doc. 108-2 at 24:21-22; Declaration of Cecilia Burks ("Burks Decl."), Doc. 108-7 at ¶6. However, Plaintiff failed to file the request with the local institution, TCI, as mandated under the BOP's regulations. MTD at

1  24:22-23. Further, the request was not submitted within twenty days of the deprivation of care.[8] MTD
2  at 24:23-25. The BOP employees argue that Plaintiff did not file any remedy requests while at TCI.
3  MTD at 24:19-20; Burks Decl. at ¶5. However, after filing the present action, Plaintiff continued to file
4  administrative claims with respect to the medical care he received at TCI. MTD at 25:2-3. The first
5  wave of requests was filed on April 30, 2003. MTD at 25:3; Burks Decl. at ¶¶8-10. Only three of the
6  twelve requests cited in Plaintiff's SAC, see Doc. 72, ¶52 & Ex. G, were properly filed through the
7  appropriate channels. MTD at 25:4-5; Burks Decl. at ¶¶8-10. However, none of the requests was timely,
8  as they were filed nearly two years after the medical care he received at TCI in 2001 and four years after
9  the transfer there in 1999. MTD at 25:5-7.

10  Plaintiff argues that he exhausted his remedies because he exhausted some appeals before he filed
11  the SAC. P's Opp'n, Doc. 120 at 12 ¶46. In the verified SAC, Plaintiff states that he exhausted all
12  available administrative remedies regarding his Bivens claims before filing the SAC, by filing
13  administrative remedies 300282, 300284, 300288, 300318, 300328, 300326, 297552, 297558, 256201,
14  297555, and 300290. SAC, Doc. 72 at 11 ¶52 & Ex. G.

15  Plaintiff argues that any untimeliness in exhausting his remedies should be excused because he
16  filed administrative remedies as soon as he was able. P's Opp'n, Doc. 120 at 8 ¶25. He claims that he
17  could not file timely requests because he was confined in the SHU, he was so ill that he didn't know
18  where he was, and he was not provided access to the grievance process by the BOP. Plaintiff was
19  confined in the SHU from July 27, 2001 until August 3, 2001. Id. at 11 ¶42; SAC at 6-7 ¶¶32-34, 7-8
20  ¶37. Plaintiff asserts that when he was transferred from TCI to FMC Ft. Worth for treatment of Valley
21  Fever, he was near death and under immediate treatment, medication, and hospitalization, which made
22  him very ill. P's Opp'n, Doc. 120 at 5-6 ¶14, 8 ¶25. After he became well enough to know where he
23  was, he began the administrative remedy process. Id. at 13 ¶52.

24  Plaintiff also claims that the BOP purposely confused him about the administrative remedy
25  process by telling him that his placement with WCC denied him access to the process. P's Opp'n, Doc.

---

[8] As stated above, the claim against the BOP employees concerns the time period up to August 3, 2001.

120 at 9 ¶¶44-47; SAC, Ex. G-1. Plaintiff argues that there is no appropriate channel in BOP policy for filing administrative remedies after transfer from a privately-run BOP facility to a BOP-run facility. P's Opp'n, Doc. 120 at 12 ¶51. On October 10, 2001, Plaintiff was transferred to FMC Fort Worth, a BOP-run facility. When he began filing administrative remedies at FMC Ft. Worth, he was told the BOP would not answer his remedies. Id. at 13 ¶52; SAC Ex. G-5. Plaintiff also argues that the BOP should not have rejected his appeal #256201-R, filed on December 14, 2001, at the Western Regional Office, as not "sensitive."[9] SAC Ex. G-4.

Plaintiff also argues that any untimeliness should be excused due to equitable tolling and the "continuing claim" doctrine. P's Opp'n, Doc. 120 at 6 ¶15, 8 ¶26. Plaintiff claims he did not know whether he could be cured until he acquired materials about Valley Fever in December 2001. Id. at 8 ¶26.

Defendants reply that Plaintiff's argument is not persuasive because the PLRA definitely requires proper exhaustion of all administrative remedies prior to filing suit. D's Reply, Doc. 122 at 13:17-21.[10] Defendants also argue that "special circumstances" or "equitable tolling" do not apply because Plaintiff has demonstrated his proficiency with the BOP's administrative process by filing 216 administrative grievances as of August 2008. Id. at 13-14; Burks Decl., Doc. 108-7 at ¶4.

In his further opposition filed July 27, 2009, Plaintiff argues that the Bivens and § 1983 claims should not be dismissed, because this Court has jurisdiction and Plaintiff has valid claims against defendants under the Eighth Amendment through the Fourteenth Amendment because of the Public Function Doctrine.

Defendants respond that Plaintiff's further opposition does not raise any arguments germane to the Federal Defendants' motion, the "public function" exception does not relate to any claims against the Federal Defendants, and the only claims against the Individual Federal Defendants are under Bivens.

---

[9] According to BOP appeal procedures, if the subject matter of an appeal is considered "sensitive," the inmate is permitted to bypass the two institutional levels and submit the appeal to the regional level. 28 C.F.R. § 542.14(d)(1).

[10] Where the pagination on Defendants' Reply, Doc. 122, differs from the pagination on the Court's electronic record, the Court uses the pagination from the Court's record.

### 3. **Discussion**

Defendants have proven that Plaintiff failed to exhaust his administrative remedies for the Bivens claims as required by the PLRA. Under BOP and TCI appeal procedures, Plaintiff had twenty days following the date of the incident to file an ARR at the institutional level. Plaintiff's claims against the Individual Federal Defendants are based on allegations that BOP employees delayed the results of his blood test until July 30, 2001 and left him in the SHU without medical treatment from July 30-August 3, 2001. Therefore, Plaintiff's deadline expired at the latest on August 23, 2001. Plaintiff failed to file any ARR at TCI by August 23, 2001.

Plaintiff argues that his confusion with BOP procedures should somehow toll the time for seeking remedies, but by the time the confusion described by Plaintiff occurred, the twenty-day window of time had already passed and it was too late to affect his ability to timely seek remedies. Plaintiff also argues that he was so ill he was unable to file an appeal between August 3, 2002 and August 23, 2001. However, even if Plaintiff were excused from meeting the 20-day deadline, the evidence demonstrates that Plaintiff filed his lawsuit before exhausting his remedies, in violation of the PLRA's requirement to exhaust before filing suit. Plaintiff argues that he filed appeal #25620, regarding his medical care, on December 14, 2001, before he filed the lawsuit on June 25, 2002. However, appeal #25620 was never exhausted. It was rejected as procedurally deficient because Plaintiff failed to file a request at the institutional level. Plaintiff's argument based on the contention that the BOP should not have classified the appeal as "not sensitive" fails, because proper exhaustion demands compliance with an agency's critical procedural rules and may not be satisfied by filing a procedurally defective appeal. Plaintiff failed to comply with the BOP's instruction to file a request or appeal "at the appropriate level via regular procedures."

Plaintiff's argument that he exhausted his remedies by completing the process before he filed the SAC also fails, because the PLRA requires exhaustion before filing the *lawsuit*, not before filing an amended complaint. Nor can equitable tolling or the continuing damages doctrine excuse the fact that Plaintiff filed his lawsuit before exhausting his remedies.

Based on the foregoing, Plaintiff has not exhausted the available administrative remedies with

18

regard to the Bivens claims, and the BOP employees are entitled to dismissal of the claims against them on this ground. Because of this finding, the Court shall not address the Individual Federal Defendants' arguments based on official capacity, supervisory liability, deliberate indifference, qualified immunity, and failure to substitute under Rule 25. See Perez, 182 F.3d at 534.

### C. Bivens Claim - Dismissal Without Prejudice

The BOP employees argue that Plaintiff's claims against them must be dismissed *with prejudice*, because the twenty-day window under 28 C.F.R. § 542.14(a) to file a timely request long ago expired, and so has the one year statute of limitations for filing a Bivens claim.

The Court finds no authority in this Circuit for the Court to dismiss a case for failure to exhaust remedies under the PLRA *with prejudice*, based on Plaintiff's ability under the statute of limitations to bring a subsequent action. Failure to exhaust administrative remedies is properly treated as a curable defect and should generally result in a dismissal *without prejudice*. City of Oakland, Cal. V. Hotels.com LP, 572 F.3d 958, 962 (9th Cir. 2009) (emphasis added). The Ninth Circuit has held that if the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal *without prejudice*. Wyatt, 315 F.3d at 1119-20; O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1059 (9th Cir. 2007) (emphasis added). The discussion about proper exhaustion in Woodford, 548 U.S. at 93, upon which Defendants rely, does not support Defendants' conclusion that dismissal *with prejudice* of Plaintiff's Bivens claims is required. In Woodford, the court found that under habeas law, a petitioner who has only "technically exhausted" remedies due to missed deadlines is barred from asserting those claims in a federal habeas proceeding. Id. Defendants do not explain, and the Court does not see, how this finding applies to the case at hand. Therefore, Plaintiff's Bivens claims against the BOP employees shall be dismissed without prejudice.

### IV. CONCLUSION

Based on the foregoing analysis, IT IS HEREBY ORDERED THAT:

1. The Federal Defendants' motion to dismiss, filed on September 8, 2008, is granted;
2. Defendant USA's motion to dismiss Plaintiff's FTCA claims, is granted with prejudice based on Plaintiff's failure to exhaust remedies under the FTCA;

19

3. The Individual Federal Defendants' motion to dismiss Plaintiff's <u>Bivens</u> claims against them is granted without prejudice, based on Plaintiff's failure to exhaust remedies under the PLRA;

4. The Federal Defendants are dismissed from this action; and

5. The Clerk is directed to reflect dismissal of defendants USA, Zachary Currier, Harley Lappin, Newton E. Kendig, and MaryEllen Thoms from this action on the Court's docket.

<u>IT IS SO ORDERED.</u>

**Dated:     September 16, 2009                      /s/ Anthony W. Ishii**
                                             CHIEF UNITED STATES DISTRICT JUDGE

20